T.C. Memo. 2008-70

UNITED STATES TAX COURT

KELVIN AND ARLENE JACKSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21526-04.                    Filed March 19, 2008.


        R determined deficiencies in income tax for Ps'
2000 and 2001 taxable years, primarily on account of
disallowed business expense deductions, and determined
that Ps were liable for the sec. 6662, I.R.C.,
accuracy-related penalty for 2000.

        <u>Held</u>:  Ps failed to substantiate their claimed
deductions and are liable for the deficiencies.

        <u>Held</u>, <u>further</u>, Ps are liable for the sec. 6662,
I.R.C., accuracy-related penalty for 2000.


Kelvin and Arlene Jackson, pro sese.

<u>Kelli H. Todd</u> and <u>Gerald Brantley</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition
for judicial review of a notice of deficiency, dated August 12,
2004, that determined deficiencies of $6,795 and $77 for taxable
years 2000 and 2001, and a section 6662 accuracy-related penalty
of $1,359 for taxable year 2000.[1]  Petitioners timely petitioned
this Court to review the notice of deficiency.  After concessions
by both parties,[2] the issues for decision are:

(1) Whether petitioners are entitled to fully or partially
deduct, in taxable year 2000, business startup expenditures that
were incurred in 1998 and 1999;[3]

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code) of 1986, as in effect for the
years in issue, and all Rule references are to the Tax Court
Rules of Practice and Procedure.

[2]Petitioners concede that they are not entitled to a $5,200
deduction for "Disabled Workers [sic] Impair" claimed on their
Schedule C, Profit or Loss From Business, for their 2001 taxable
year.  Respondent concedes that for taxable year 2000,
petitioners are allowed to claim the following Schedule C
deductions:  (1) $899.57 interest expense; (2) $217 travel
expense; (3) $1,387.44 in other expenses; (4) $1,069 depreciation
expense; and (5) $1,620 in educational expenses for University of
Texas classes.  Respondent concedes that for taxable year 2001,
petitioners are allowed a $1,117 Schedule C deduction for donated
books.

[3]The total amount of startup expenditures that petitioners
incurred in 1998 and 1999 and deducted in 2000 is unclear to the
Court.  Respondent claimed that petitioners presented
approximately $12,000 in receipts dated 1998 or 1999.
Petitioners offered into evidence receipts dated 1998 or 1999
totaling approximately $9,630.  The discrepancy regarding the
(continued...)

(2) whether petitioners had cost of goods sold of $18,367.57 for taxable year 2000;

(3) whether petitioners are entitled to expense $6,902.80 in depreciable business assets purchased in taxable year 2000;

(4) whether petitioners are entitled to claim Schedule C deductions in excess of the $5,193.10 and $14,936, for 2000 and 2001, respectively, that respondent has previously allowed or conceded;[4]

(5) whether petitioners are liable for the section 6662 accuracy-related penalty for taxable year 2000;

(6) whether to grant petitioners' motion to impose sanctions on respondent pursuant to Rule 104(c).

### FINDINGS OF FACT

Some of the facts have been stipulated by the parties. The stipulations, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed petitioners resided in Austin, Texas.

---

[3](...continued) amount of petitioners' startup expenditures is moot as the Court concludes, infra, that petitioners are not entitled to deduct their startup expenditures. The Court notes that petitioners claimed $45,496.27 in Schedule C deductions for 2000 and were unable to substantiate most of those deductions.

[4]The Court notes that in calculating their 2001 Schedule C expenses petitioners made an error that respondent did not notice. See infra note 12. The $14,936 amount is based on the Court's calculation, correcting for the error, of the Schedule C expenses allowed or conceded by respondent.

Arlene Jackson (Mrs. Jackson) established her sole proprietorship Hansie Productions Health Education & Research (Hansie Productions) in July 1999. On October 22, 1999, Mrs. Jackson received a $10,000 loan from Business Invest in Growth (BIG) to fund the startup costs of Hansie Productions. According to the terms of the loan, $6,500 was to be used to purchase inventory, and $3,500 was to be used as operating capital. On Schedule C of petitioners' 2000 joint Form 1040, U.S. Individual Income Tax Return, line H was checked to indicate that Hansie Productions' business was started during the 2000 taxable year.

Hansie Productions provides health education and health and arts programming, conducts health research studies, and publishes and distributes books, pamphlets, brochures, and bookmarks. Hansie Productions provides classes and counseling on abstinence, drugs, and alcohol to middle schools and high schools in Texas. Mrs. Jackson is the author of several books, including Ain't No Half Steppin', Champions of Change (Biographies of Famous Black Americans), and Howling Against the Wind.

Petitioners' 2000 joint Form 1040 was received by respondent on October 16, 2001. On Schedule C petitioners claimed a net loss of $45,496.27 for Hansie Productions.[5] Specifically,

---

[5]The only Schedule C deductions that are at issue for taxable years 2000 and 2001 are those from Hansie Productions.

(continued...)

petitioners reported $327.79 in gross sales and claimed cost of goods sold (CGS) of $19,887.57. Respondent allowed only $1,520 of the claimed CGS.[6]

To substantiate their CGS, petitioners presented at trial an invoice from Steck-Vaughn Co., dated April 21, 1998, for 1,000 copies of Champions of Change (Biographies of Famous Black Americans), for a total cost of $2,359.85. Petitioners also presented an invoice from Winston Derek Publishers Group, Inc., dated February 8, 1999, for a total cost of $525.56 for 56 copies of Howling Against the Wind. Additionally, petitioners presented Travelers Express Co., Inc. Drawers (Travelers Express) receipts with a combined total of $707.[7] The Travelers Express receipts, which provided only the date and amount, contained handwritten

---

[5](...continued)
Kelvin Jackson's (Mr. Jackson) 2000 Schedule C-EZ, Net Profit From Business, and 2001 Schedule C deductions are not at issue. Accordingly, all references to Schedule C deductions are to those for Hansie Productions.

Mr. Jackson reported on his 2000 Schedule C-EZ a net profit of $3,348.45 from his business of "News Paper [sic] Deliverer". As a result, line 12 of petitioners' 2000 joint Form 1040 lists $42,147.82 as their net business loss.

[6]Respondent's notice of deficiency indicates that $18,367 of the claimed $19,887.57 CGS was disallowed in 2000, which would leave $1,520.57 as allowable. The Court notes that amount should have been rounded to $1,521, not $1,520.

[7]The Travelers Express receipts were dated Dec. 27, 1999, and Mar. 10 and 19 and Aug. 25, 2000, bearing amounts of $57, $200, $200, and $250, respectively.

notations on the backs of the Travelers Express receipts that provide "Monarch Pub Ain't No Half Steppin'".

Petitioners also provided UPS receipts showing that Mrs. Jackson mailed her books to bookstores and other recipients. The receipts provide the names, addresses, package contents, and declared values of shipments by Mrs. Jackson, Mr. Jackson, and Hansie Productions.[8]  The total declared value for all of the books shipped was $550.

Petitioners also presented an invoice from Bacon's Mailing Service for $3,858.71 dated April 23, 2001.  The invoice indicates that petitioners purchased 511 "PRESS KITS", which consisted of a "5X7 PHOTO W/LABEL CAPTION AFFIXED TO BACK.  1

---

[8]A UPS receipt dated Feb. 4, 2000, indicates that Mrs. Jackson shipped books to "Amazon.com Advantage DC" in Delaware, with a declared value of $100, and to "Barnes & Nobles Extended Title" in New Jersey in two separate packages, each with a declared value of zero.  A UPS receipt dated Feb. 16, 2000, indicates that Mrs. Jackson shipped books to "Nu World of Books" in Texas, and that Mr. Jackson shipped books to Mrs. Jackson in New Jersey and Pennsylvania; there were no declared values provided.  A UPS receipt dated Mar. 2, 2000, indicates that Mrs. Jackson shipped books to: (1) "Lushena Books" in Illinois; (2) "TMJ. D Lindsey Council" in North Carolina; (3) "Barnes & Nobles" in New Jersey; and (4) "The Elliott Bay Book Co" in Washington.  The receipt lists the declared value as $100 for each of the first 3 packages and $50 for the fourth.  A UPS receipt dated Apr. 3, 2000, indicates that Mrs. Jackson shipped books to "Ingram Book Com" in Tennessee and "Amazon.com" in Delaware; there were no declared values provided.  A UPS receipt dated Oct. 6, 2000, indicates that Mrs. Jackson shipped books to "Ingram Book Company" in Tennessee; there was no declared value provided.  A UPS receipt dated Nov. 29, 2000, indicates that Hansie Productions shipped books to "Amazon.com Advantage DC" in Delaware, with a declared value of $100.

PAPERBACK BOOK, 1 PAGE COVER PAGE, AND 1-3 PAGE RELEASE TO BE COLLATED STAPLED AND INSERTED INTO A PADDED ENVELOPE MAILER", that totaled $1,134.42, and also 1 "SOFTWARE MEDIA CONTACT LIST", that totaled $2,430.21.[9]  The invoice indicates below the total "PREPAID VIA VISA CREDIT CARD ENDING IN NUMBER: *6166 EXPIRATION DATE 01/03".

Petitioners also claimed on their Schedule C for the taxable year 2000 supplies other than those included in CGS of $6,902.80, which respondent disallowed.  At trial petitioners provided invoices for, inter alia, a Dell computer, a digital camera, a scanner, and office furniture, which substantiated $5,748.27 of their claimed expenses.  Respondent conceded that petitioners are entitled to a depreciation expense of $1,069 for taxable year 2000.  See supra note 1.

Additionally, petitioners claimed total expenses of $25,936.49 on Schedule C of their 2000 joint Form 1040, which included "Other expenses" of $15,064.69 on line 27 of Schedule

---

[9]Attached to the invoice was a fax from Bacon's Mailing Service to Hansie Productions, entitled "Re: Quote for Mailing", dated Apr. 9, 1999, that stated:

Project Description:    Mailing to include one kit cover with one 5x7 photo with label caption affixed to the back, one paperback book, one 1-page generic cover page and one 3-page release to be collated and stapled and inserted into padded mailer.  Client to provide letterhead for 1st pages of release and paperback books.  Bacon's to provide plain white for second pages of release, photo reproduction, kit covers, and padded mailers.  (Emphasis omitted.)

C.[10]  Respondent initially disallowed all of petitioners' claimed

"Other expenses" for 2000, but subsequently conceded $1,387.44.

See supra note 1.  Petitioners also deducted on their 2000 joint

Form 1040 expenses incurred in taxable years 1998 and 1999.  See

supra note 2.

On their 2001 joint Form 1040, petitioners claimed a net

loss of $21,826 from Hansie Productions.[11]  Specifically,

petitioners reported $6,839 in gross receipts and did not claim

any CGS.  Petitioners claimed $28,665 in total expenses.[12]

---

[10]The total expenses consisted of:  (1) "Advertising" of
$3,969; (2) "Supplies" of $6,902.80; and "Other expenses" which
included (1) "Occupational Professional Organization Dues" of
$350; (2) "Travel to secure distributers; customers" of
$2,497.69; (3) "Business management consultant" of $887;
(4) "Post Office Box (64) Website (432)" of $496;
(5) Professional magazines books: Trade" of $410; (6) "Disabled
Worker Impairment Expenses Necessary for proprietor to work" of
$4,590; (7) "expense required to satisfactorily perform work" of
$3,154; and (8) "Incidental supplies consumed in tax year" of
$2,680.

[11]Mr. Jackson reported on his Schedule C a net profit of
$1,294 from "1099 MISC INCOME".  As a result, line 12 of
petitioners' 2001 joint Form 1040 lists $20,532 as their net
business loss.

[12]The total expenses consisted of: (1) "Advertising" of
$2,670; (2) "Car and truck expenses" of $203; (3) "Interest" of
$934; (4) "Rent or lease" of $1,428; (5) "Meals and
entertainment" of $54; (6) "Legal and professional services" of
$75; and "Other expenses" which included (1) "DONATED BOOKS TO
LIBRARY" of $6,029; (2) "DISABLED WORKERS IMPAIR" of $5,200;
(3) "PO RENT" of $64; (4) "PROFESSIONAL ORG DUES" of $490;
(5) PROFESSIONAL TRADE MAG" of $410; and (6) "WEBSITE" of $2,900.

The Court notes that the listed "Other expenses" total
$15,093, not $23,301 as was listed on line 27, Other Expenses, of

(continued...)

On January 9, 2006, petitioners filed a motion for sanctions against respondent.  A trial was held on January 10, 2006.  At trial, petitioners presented voluminous documents that were admitted into evidence.[13]  On January 24, 2006, respondent's response to "petitioners'" motion for sanctions against respondent was filed with the Court.

OPINION

I.  Burden of Proof

As a general rule, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, pursuant

---

[12](...continued)
Mrs. Jackson's 2001 Schedule C.  Petitioners appear to have made a mathematical error that went undetected by respondent. According to the Court's calculations, Mrs. Jackson's listed Schedule C expenses total $20,457, not $28,665.

[13]Many of petitioners' documents that were admitted into evidence were from taxable years preceding the years in issue. Also, many documents were letters, e-mails, and questionnaires that failed to substantiate any expenditures.  Petitioners' extensive documentation, as described on brief, included, inter alia:

a letter of recommendation from the past owner of the Emergi-Clinic which states that * * * [Mrs. Jackson] had successfully attended computer classes in 1983, and that she'd worked as a Manager and had trained staff members.  She has a letter of appreciation from Texas Circuit (1988) for allowing her students to participate in 'Open Mic Night.'  Petitioner has letters from teachers in Beaumont, and Dallas, Texas thanking her for the programming she'd provided their students.

to section 7491(a), the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue."  The burden will shift only if the taxpayer has, inter alia, complied with substantiation requirements pursuant to the Internal Revenue Code and "cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews". Sec. 7491(a)(2).  In the instant case, petitioners did not argue that the burden should shift, and they failed to comply with the substantiation requirements.  Accordingly, the burden of proof remains on petitioners.

II.  Deductions

A. General Rules

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Taxpayers must maintain records relating to their income and expenses and must prove their entitlement to all claimed deductions, credits, and expenses in controversy.  See sec. 6001; Rule 142(a); INDOPCO, Inc. v. Commissioner, supra at 84; Welch v. Helvering, supra at 115.

Pursuant to section 162(a), a taxpayer is entitled to deduct all of the ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business. The taxpayer bears the burden of proving that the expenses were ordinary and necessary according to section 162. In certain circumstances, the taxpayer must meet specific substantiation requirements in addition to section 162. See sec. 274.

To be "ordinary" the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. Dupont, 308 U.S. 488, 495 (1940). To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, supra at 113. Additionally, the expenditure must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs.

Generally, a claimed expense (other than those subjected to heightened scrutiny under section 274) may be deductible even where the taxpayer is unable to fully substantiate it, if there is an evidentiary basis for doing so. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014

(Nov. 6, 1985).  In these instances, the Court is permitted to make as close an approximation of the allowable expense as it can, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, supra.

B. Substantiation Requirements of Section 274

Section 274(d) applies to:  (1) Any traveling expense, including meals and lodging away from home; (2) entertainment, amusement, and recreational expenses; or (3) the use of "listed property", as defined in section 280F(d), including personal computers.  To deduct such expenses, the taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony:  (1) The amount of the expenditure or use; (2) the time and place of the travel, entertainment, amusement, or recreation; (3) its business purpose; and in the case of entertainment, (4) the business relationship to the taxpayer of each expenditure or use.  Sec. 274(d).

To satisfy the adequate records requirement of section 274, a taxpayer must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use.  Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction "of the elements * * * of the

expenditure or use must have a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

C. Startup Expenditures

Pursuant to section 195(a), startup expenditures are not generally deductible. However, at the election of the taxpayer, startup expenditures may be treated as deferred expenses and amortized over at least a 60-month period beginning in the month in which the active trade or business begins. See sec. 195(b)(1), (c). Section 195(c) provides in part:

The term "startup expenditure" means any amount--

    (A) paid or incurred in connection with--

        (i) investigating the creation or acquisition of an active trade or business, or

        (ii) creating an active trade or business, or

        (iii) any activity engaged in for profit and for the production of income before the day on which the active trade or business begins, in anticipation of such activity becoming an active trade or business, and

    (B) which, if paid or incurred in connection with the operation of an existing active trade or business (in the same field as the trade or business referred to in subparagraph (A)), would be allowable as a deduction for the taxable year in which paid or incurred.

The taxpayer must elect to amortize his or her startup expenditures. Sec. 195(d). Regulations promulgated under section 195 provide the time and manner for making such an

election.   See sec. 1.195-1(b), Income Tax Regs.   A taxpayer

makes an election by attaching a statement (election statement)

to his or her tax return, which must be filed no later than the

date prescribed for filing the return, including extensions, for

the taxable year in which the active trade or business begins.[14]

Sec. 195(d); sec. 1.195-1(b), Income Tax Regs.   The election

statement must provide the following information:

> The statement shall set forth a description of the
> trade or business to which it relates with sufficient
> detail so that expenses relating to the trade or
> business can be identified properly for the taxable
> year in which the statement is filed and for all future
> taxable years to which it relates.   The statement also
> shall include the number of months (not less than 60)
> over which the expenditures are to be amortized, and to
> the extent known at the time the statement is filed, a
> description of each start-up expenditure incurred
> (whether or not paid) and the month in which the active
> trade or business began (or was acquired).   * * *
> [Sec. 1.195-1(c), Income Tax Regs.]

Once effective, the election applies to all startup

expenditures related to the active trade or business and is

irrevocable.   Sec. 1.195-1(a), Income Tax Regs.   A taxpayer may

file a revised statement that includes any startup expenditures

not included in the original statement.   Sec. 1.195-1(c), Income

Tax Regs.

---

[14]The election statement may be attached to, and filed with, a tax return for a taxable year preceding the taxable year in which the taxpayer's trade or business becomes active.   Sec. 1.195-1(b), Income Tax Regs.   The election does not become effective until the first month in which the taxpayer's trade or business becomes active.   Id.

A taxpayer bears the burden of proving that he or she executed a timely election to amortize startup expenditures. See Krebs v. Commissioner, T.C. Memo. 1992-154; Pino v. Commissioner, T.C. Memo. 1987-28. Petitioners have not established that they executed a timely election. The record indicates that petitioners fully deducted in taxable year 2000 the startup expenditures incurred in 1998 and 1999 for Hansie Productions. The record further indicates that petitioners did not provide a description of each startup expenditure and did not amortize their expenditures. Respondent disallowed the entire amount of the deduction. The Court sustains respondent on this issue. See Krebs v. Commissioner, supra; Pino v. Commissioner, supra.

D. Cost of Goods Sold

In calculating gross income, taxpayers may offset gross revenue with CGS. B.C. Cook & Sons, Inc. v. Commissioner, 65 T.C. 422, 428 (1975), affd. 584 F.2d 53 (5th Cir. 1978). Pursuant to regulations promulgated under section 162, "The cost of goods purchased for resale, with proper adjustment for opening and closing inventories, is deducted from gross sales in computing gross income." Sec. 1.162-1(a), Income Tax Regs.; see sec. 1.61-3, Income Tax Regs. Taxpayers are required to take "inventories at the beginning and end of each taxable year" in which "the production, purchase, or sale of merchandise is an income-producing factor." Sec. 1.471-1, Income Tax Regs. There

is an exception to the inventory accounting requirements for taxpayers with average annual gross receipts of $1 million or less. See Rev. Proc. 2001-10, sec. 1, 2001-1 C.B. 272, 272. The exception is only available for taxpayers that are not required to use the inventories or accrual method of accounting, and for tax years ending after December 17, 1999.[15] Id. secs. 1, 8, 2002-1 C.B. 272, 275.

If the exception is applicable, the taxpayer may choose to treat inventory in the same manner as materials and supplies that are not incidental pursuant to regulations promulgated under section 162. See sec. 1.162-3, Income Tax Regs. Pursuant to section 1.162-3, Income Tax Regs.:

> Taxpayers carrying materials and supplies on hand should include in expenses the charges for materials and supplies only in the amount that they are actually consumed and used in operation during the taxable year for which the return is made, provided that the costs of such materials and supplies have not been deducted in determining the net income or loss or taxable income for any previous year.  * * *

For a taxpayer using the exception, the inventoriable items that are treated as materials and supplies that are not incidental are considered consumed and used in the year in which the taxpayer sells the merchandise or finished goods. See Rev.

---

[15]The IRS will not challenge a taxpayer's use of the cash method under sec. 446, or a taxpayer's failure to account for inventories under sec. 471, in a tax year ending before Dec. 17, 1999, if the taxpayer would satisfy the 3-tax-year-period gross receipts test of Rev. Proc. 2001-10, sec. 5.01, 2001-1 C.B. 272, 273. Id. sec 8., 2001-1 C.B. at 275.

Proc. 2001-10, sec. 4.02, 2001-1 C.B. at 273.  For a cash method taxpayer, the cost of such inventoriable items are deductible only in that year, or in the taxable year in which the taxpayer actually pays for the inventoriable items, whichever is later. Id.

CGS is not treated as a deduction and is not subject to the limitations on deductions contained in sections 162 and 274. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987). However, any amount claimed as CGS must be substantiated, and taxpayers are required to maintain records sufficient for this purpose.  Sec. 6001; Nunn v. Commissioner, T.C. Memo. 2002-250; Wright v. Commissioner, T.C. Memo. 1993-27; sec. 1.6001-1(a), Income Tax Regs.  Where taxpayers do not have adequate records, but where the record suggests that they clearly incurred an offset to gross income, courts may estimate the offset based on the evidence.  Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).

On Schedule C of petitioners' 2000 joint Form 1040, Mrs. Jackson reported only $327.79 of gross receipts and claimed CGS of $19,887.57 for Hansie Productions.  Petitioners offered into evidence substantiation for inventory, i.e. 1,000 copies of Champions of Change and 56 copies of Howling Against the Wind, totaling $2,885.41.  On brief, respondent conceded that Mrs. Jackson "produced documents substantiating that she paid $19,677.00 to purchase copies of novels that she authored."

However, respondent allowed petitioners only a $1,520 CGS deduction "Since all of the books purchased were not sold during taxable year 2000".

Petitioners claim that "Some of this inventory was utilized for garnering bookstores as distributors of products, and for advertising/publicity packages to newspapers, consumer health information organizations, television stations, and radio stations for printed reviews." Petitioners presented an invoice from Bacon's Mailing Service that indicated that they had purchased 511 press kits that would contain one paperback book each when mailed or shipped. Petitioners did not provide any evidence that they actually mailed or shipped the press kits, other than UPS receipts that indicated books with a declared value of $550 had been shipped. Petitioners have not shown that the $550 declared value was not included in the $1,520 CGS allowed by respondent, nor have they shown that they are entitled to CGS in excess of that allowed by respondent. Accordingly, the Court sustains respondent on the CGS issue for taxable year 2000.

E. Depreciable Assets

A taxpayer may elect to deduct as a current expense the cost of any section 179 property, with certain dollar limitations, that is acquired for purchase in the active conduct of a trade or business and placed in service during the taxable year. Sec. 179(a), (b), (d)(1); see sec. 1.179-4(a), Income Tax Regs.

Section 179 property was, during the taxable years at issue, tangible personal property and certain other property listed in section 1245(a)(3).  See secs. 179(d)(1), 1245(a)(3).

Section 179 has its own substantiation and election requirements.  The taxpayer must maintain records reflecting how and from whom the section 179 property was acquired and when it was placed in service.  Sec. 1.179-5(a), Income Tax Regs.  A section 179 election must be made on the taxpayer's first income tax return for the taxable year the property is placed in service, whether or not the return is timely, or on an amended return filed within the time prescribed by law (including extensions) for filing the original return for such year.  Sec. 179(c)(1)(B); sec. 1.179-5(a), Income Tax Regs.  The section 179 election must specify the total section 179 expense deduction claimed and enumerate the portion of that deduction allocable to each specific item.  Sec. 179(c)(1); sec. 1.179-5(a)(1) and (2), Income Tax Regs.

The election is normally made by attaching Form 4562, Depreciation and Amortization, to the taxpayer's return.[16]  Visin v. Commissioner, T.C. Memo. 2003-246, affd. 122 Fed. Appx. 363 (9th Cir. 2005); see 2000 Instructions for Schedule C, Profit or Loss From Business, Specific Instructions, Part II. Expenses,

---

[16]Part I of Form 4562 is entitled "Election to Expense Certain Tangible Property (Section 179)".

Line 13, Depreciation and Section 179 Expense Deduction; Form 4562.  A taxpayer who fails to make the election is denied the benefits of section 179.  See Visin v. Commissioner, supra; Verma v. Commissioner, T.C. Memo. 2001-132; Fors v. Commissioner, T.C. Memo. 1998-158; Starr v. Commissioner, T.C. Memo. 1995-190, affd. without published opinion 99 F.3d 1146 (9th Cir. 1996).

Petitioners deducted $6,902.80 on Schedule C of their 2000 joint Form 1040.  They failed to individually list the property in respect of which they claimed this deduction.  Mrs. Jackson admitted at trial that petitioners did not attach Form 4562 to their 2000 joint Form 1040.  Respondent disallowed the entire deduction, but conceded that petitioners are entitled to a depreciation expense of $1,069.[17]  As petitioners failed to make the section 179 election, they are not entitled to the benefits of section 179.  Accordingly, the Court sustains respondent on this issue.

F. Miscellaneous Schedule C Deductions

On January 9, 2006, the night before trial, petitioners presented to respondent various invoices to substantiate additional expenses for 2001.  Petitioners presented invoices for advertising expenses, Internet design expenses, travel expenses, mail and post office box expenses, and trade magazine expenses.

[17]Petitioners provided invoices for, inter alia, a Dell computer, a digital camera, a scanner, and office furniture, which substantiated $5,748.27 of their claimed deduction.

Respondent contends that petitioners have not shown that the expenses were not previously allowed or that the expenses were incurred in 2001.

### 1. Advertising Expenses

Petitioners claimed on Schedule C of their joint 2001 Form 1040 an advertising expense of $2,670, which respondent allowed. Petitioners then presented to respondent the night before trial several Amazon.com invoices totaling $1,929.38.[18]  Internal Revenue Agent David Irving, who conducted petitioners' audit, testified at trial that the Amazon.com invoices substantiated a portion of the advertising deduction claimed and allowed on petitioners' 2001 Schedule C.  Petitioners have not shown that the Amazon.com invoices were not included in deductions previously allowed.  Accordingly, the Court concludes that petitioners are not entitled to a Schedule C deduction on their 2001 tax return for Amazon.com advertising expenses in excess of the $2,670 advertising expense allowed by respondent.

---

[18]Petitioners presented the following 11 Amazon.com invoices that listed Hansie Productions as the vendor: (1) dated Feb. 28, 2001, in the amount of $203.97; (2) dated Mar. 31, 2001, in the amount of $384.73; (3) dated Apr. 30, 2001, in the amount of $217.43; (4) dated May 30, 2001, in the amount of $40.55; (5) dated June 30, 2001, in the amount of $170.32; (6) dated July 31, 2001, in the amount of $95.34; (7) dated Aug. 31, 2001, in the amount of $80.93; (8) dated Oct. 31, 2001, in the amount of $40; (9) dated Nov. 30, 2001, in the amount of $82.83; (10) dated Dec. 29, 2001, in the amount of $613.28; and (11) dated Jan. 31, 2002, which makes it irrelevant to taxable year 2001, in the amount of $567.41.  The total amount paid to Amazon.com in taxable year 2001 was $1,929.38.

2. Internet Design Expenses

Petitioners presented at trial invoices for Web site design from Nigel Gusdorf of $320 and $1,160, paid April 25 and September 28, 2001, respectively. On Schedule C of their 2001 joint Form 1040, petitioners claimed and respondent allowed a deduction of $2,900 for "WEBSITE". Petitioners failed to show that the $1,480 in invoices they presented was not included in their previously allowed deduction. Accordingly, the Court concludes that petitioners are not entitled to an additional Schedule C deduction on their 2001 tax return for Web site design expenses.

3. Travel Expenses

As stated supra, the strict substantiation requirements of section 274(d) apply to travel expenses. Petitioners presented invoices from Northwest Airlines and Doubletree Hotel in the amounts of $221.50 and $458.84, respectively, for a trip to Columbia, South Carolina, from November 24 to 28, 2001. Petitioners produced at trial a document, which was previously given to respondent, entitled "Business Use of Car Tax Year 2001" that provided "11/24 to 11/28/01 Columbia, S.C. Conducted Workshop at Black owned bookstore--agreement w/bookstore to carry books. Airline & Hotel documentation provided." However, Mrs. Jackson did not produce the agreement she entered into with the bookstore.

Petitioners have not presented any evidence substantiating the alleged business purpose of Mrs. Jackson's trip, other than their document and her uncorroborated testimony at trial, and, therefore, have failed to meet the substantiation requirements of section 274(d). Furthermore, although petitioners did not claim a deduction for travel expenses on their joint 2001 Form 1040, respondent allowed $2,071 in travel expenses. Petitioners have not shown that the Northwest Airlines and Doubletree travel expenses were not included in the expenses previously allowed by respondent. Accordingly, the Court concludes that petitioners are not entitled to a deduction for travel expenses in excess of the $2,071 previously allowed by respondent.

4. Mail and Post Office Box Expenses

Petitioners presented at trial an invoice from Bacon's Mailing Service $3,858.71 for taxable year 2001, discussed supra. Petitioners did not claim an expense for mailing services on their 2001 joint Form 1040. Respondent contends that petitioners have not shown that the invoice was paid in 2001 as the prepayment date was not provided. The Court agrees with respondent. Accordingly, the Court concludes that petitioners are not entitled to a Schedule C deduction for mailing expenses for taxable year 2001.

Petitioners claimed a deduction for "PO RENT" of $64 on Schedule C of their joint 2001 Form 1040, which respondent

allowed. The night before trial petitioners presented an invoice, dated 2001, for a U.S. Postal Service post office box in the amount of $64. Petitioners have not shown that the invoice presented at trial was not included in the deduction previously allowed by respondent. Accordingly, the Court concludes that petitioners are not entitled to a Schedule C deduction for post office box expenses for taxable year 2001 in excess of the $64 previously allowed.

5. Trade Magazine Expenses

The night before trial petitioners presented to respondent the following invoices: (1) Publishers Weekly in the amount of $139, dated March 28, 2001; (2) "Bowker" in the amount of $314.49 for Literary Market Place, which was prepaid by a Visa credit card and reflected a renewal date of September 12, 2001; and (3) Ad Lib Publications in the amount of $434.95, dated January 13, 2001. On Schedule C of their 2001 joint Form 1040, petitioners claimed and respondent allowed deductions of $490 for "Professional Org Dues" and $410 for "Professional Trade Mag". Petitioners have not shown that the invoices they presented were not included in either of the deductions previously allowed. Accordingly, the Court concludes that petitioners are not entitled to a Schedule C deduction for trade magazine expenses for taxable year 2001 in excess of the $900 previously allowed.

III. <u>Penalty</u>

    A. <u>General Rules</u>

The Commissioner bears the burden of production in any court proceeding with respect to an individual's liability for penalties or additions to tax. Sec. 7491(c). To meet this burden, the Commissioner must present "sufficient evidence indicating that it is appropriate to impose the relevant penalty" or addition to tax. <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). In instances where an exception to the penalty or addition to tax is afforded upon a showing of reasonable cause, the taxpayer bears the burden of showing such cause. <u>Id.</u> at 446-447.

    B. <u>Section 6662 Accuracy-Related Penalty</u>

Pursuant to section 6662(a), a taxpayer may be liable for a 20-percent penalty on the portion of an understatement of income tax attributable to, inter alia, negligence or disregard of rules or regulations, or to a substantial underpayment of tax. Sec. 6662(a) and (b)(1) and (2). "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c). The regulations promulgated under section 6662 provide that negligence is strongly indicated where "A taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return which would seem to a reasonable and

prudent person to be 'too good to be true' under the circumstances". Sec. 1.6662-3(b)(1)(ii), Income Tax Regs. The regulations further provide that negligence "also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b), Income Tax Regs.

Negligence is defined as the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part on another ground 43 T.C. 168 (1964) and T.C. Memo. 1964-299); see Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989). Negligence is determined by testing the taxpayer's conduct against that of a reasonable, prudent person. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982).

No penalty is imposed under section 6662 if there is reasonable cause for the underpayment of tax and the taxpayer has acted in good faith. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances of each particular case. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable considering

the taxpayer's experience, knowledge, and education. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners are no strangers to the section 6662(a) accuracy-related penalty. This Court sustained respondent's determination that petitioners were liable for the section 6662(a) penalty for taxable year 2002 because of "their failure to maintain and produce the required documentation to support their deductions". Jackson v. Commissioner, T.C. Memo. 2005-159.

On Schedule C of their 2000 joint Form 1040, petitioners fully deducted startup costs incurred in 1998 and 1999 for Hansie Productions instead of amortizing the expenditures over a period of at least 60 months. The instructions to Schedule C clearly state that startup expenditures must be amortized. See 2000 Instructions for Schedule C, Profit or Loss From Business, General Instructions, Other Schedules and Forms You May Have to File, and Part V Specific Instructions, Other Expenses; 2000 Instructions for Form 4562, Part VI--Amortization, Line 40.

Additionally, petitioners fully deducted the cost of office furniture and equipment they purchased in 2000, some of which they admitted was for personal use, without making the appropriate election under section 179. The instructions to

Schedule C clearly state that Form 4562 must accompany the tax return.  See 2000 Instructions for Schedule C, Profit or Loss From Business, General Instructions, Other Schedules and Forms You May Have To File, and Line 13, Depreciation and Section 179 Expense Deduction; 2000 Instructions for Form 4562, Part I-- Election to Expense Certain Tangible Property (Section 179).

Furthermore, petitioners claimed CGS of $19,887.57, while reporting only $327.79 in gross receipts, which the Court concludes "would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances".  See sec. 1.6662- 3(b)(1)(ii), Income Tax Regs.  Overall, for taxable year 2000, petitioners failed to keep adequate books and records and to substantiate items properly.  See sec. 1.6662-3(b), Income Tax Regs.  The Court concludes that petitioners acted negligently with regards to their 2000 joint Form 1040.  They failed to substantiate, and ascertain the correctness of, many of their claimed deductions.  Accordingly, the Court sustains respondent on this issue.

IV.  <u>Petitioners' Motion for Sanctions</u>

Rule 104(c) provides that if a party fails to obey an order of the Court involving certain discovery matters, then the Court may make such orders as to the failure as are just.  Such orders may include, but are not limited to, "An order striking out pleadings or parts thereof, or staying further proceedings until

the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party." Rule 104(c)(3).

Petitioners, in their motion, have asked the Court to "issue an order imposing sanctions upon Respondent for failure to adhere to the Branerton Requirement." Petitioners, on brief, claim that "Respondent should have granted Petitioners [sic] (numerous written) requests for Discovery, as the pertinent documents were in their possession, and not inconvenient for the Service (an assistant or secretary) to copy and mail to the Petitioners [Tax Court Rule 72]".

Petitioner's motion further states that "After Respondent failed to provide Petitioners copies of every document given to the Service Petitioners then made application to the Court for a Written Deposition [to] be taken of Tax Compliance Officer, D.L. Irving." (Emphasis omitted.) The Court denied petitioners' applications for orders to take depositions. Although petitioners repeatedly argued that respondent failed to provide them with requested documents, petitioners on brief asserted that they were able to reconstruct "with original documentation the majority of deductions which had been taken". (Emphasis omitted.)

Respondent complied with all of the Court's orders, and as a result was in compliance with Rule 104(c). All of petitioners'

complaints regarding respondent's alleged conduct during discovery are related to motions by petitioners that were denied by this Court.  Accordingly, the Court denies petitioners' motion for sanctions.

V.    Conclusion

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing and concessions by both parties,

An appropriate order will
be issued, and decision will
be entered under Rule 155.